UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ADDY'S BURGER, L.L.C.                                      CIVIL ACTION

VERSUS                                                     NUMBER: 17-2400

PARADIGM INVESTMENT GROUP, LLC                             SECTION: "I"(5)

## ORDER AND REASONS

### I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

This lawsuit arises out of an alleged breach of a lease agreement between Plaintiff, Addy's Burger, LLC ("Addy's Burger") and its tenant, Paradigm Investment Group, LLC ("Paradigm"), which is said to have occurred after the sale of the property and the assignment of the lease by the original lessor, Chalmette Burgers, LLC ("Chalmette Burgers").

On March 15, 2013, Paradigm and Chalmette Burgers executed a Lease Agreement (the "Lease") for property located at 8400 West Judge Perez Dr., Chalmette, LA 70043 (the "Property"). (Rec. doc. 1). Pursuant to the Lease, Paradigm would operate a Hardee's restaurant on the Property. Section 5.02 of the Lease contains an indemnity clause that provides, in pertinent part:

> INDEMNITY: TENANT will indemnify, defend, and hold harmless LANDLORD . . . from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees and experts' fees and disbursements) (collectively, the "Liabilities") arising from . . . (iv) any misrepresentation or breach of warranty by TENANT under this Lease.

(Rec. doc. 1-1).

In late 2015 Chalmette Burgers decided to sell the Property and eventually did sell it to Addy's Burger. As part of the sale of the Property, on March 2, 2016, Chalmette Burgers and Addy's Burger executed an Assignment and Assumption of the Lease (the "Assignment"). (Rec. doc. 1-2). The Effective Date of the Assignment was March 2, 2016. (*Id.*). The Assignment provides, in pertinent part:

1. <u>Assignment.</u> As of the Effective Date, Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Lease, including, without limitation, the Guaranty, if any, and all of Assignor's right, title and interest in and to security, cleaning or other deposits and in and to any claims for rent, arrears rent or any other claims arising under the Lease against any lessee thereunder, subject to the rights of the lessees under the Lease.

2. <u>Assumption.</u> Assignee hereby assumes and agrees to pay all sums, and perform, fulfill and comply with all covenants and obligations, which are to be paid, performed, fulfilled and complied with by the lessor under the Lease, from and after the Effective Date.

(*Id.*).

Shortly after the Assignment and sale of the Property from Chalmette Burgers to Addy's Burger, Paradigm informed Addy's Burger that it would not be able to make its rental payments under the Lease and it vacated the Property. On March 23, 2017, Addy's Burger filed the instant lawsuit against Paradigm, seeking damages from Paradigm for its alleged breach of the Lease.

Shortly thereafter, on March 29, 2017, Addy's Burger filed suit against Chalmette Burgers in the Civil District Court for the Parish of Orleans, seeking damages and rescission of the sale of the Property. On October 5, 2017, Addy's Burger filed its Second Amended and Supplemental Complaint in this Court, adding as defendants Chalmette Burgers; its principal,

Paul Dorsey; and Capital Pacific Real Estate Brokerage Company, the real estate brokerage company hired by Chalmette Burgers to sell the Property. (Rec. doc. 28).

On March 14, 2018, the Court granted Paradigm's motion for leave to file a crossclaim against Addy's Burger and a counterclaim against Chalmette Burgers. (Rec. docs. 67-69). Chalmette Burgers responded by filing its own crossclaim against Paradigm, seeking defense and indemnity under the Lease vis-à-vis Addy's Burger's claim against it, to wit:

> Under the clear language of section 5.01 of the Lease, Paradigm owes Chalmette Burgers indemnity and defense to the claims brought by Addy's Burger. Accordingly, Chalmette Burgers seeks enforcement of the terms and provisions of the Lease by way of an award of its attorneys' fees and costs incurred to defend the underlying Action by Plaintiff, Addy's Burger, as well as indemnity for any and all recovery that Addy's Burger may receive against Chalmette Burgers in the underlying Action.

(Rec. doc. 85, para. 86).

Paradigm responded to this claim by filing the instant motion, titled "Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment." (Rec. doc. 101). Chalmette Burgers filed an opposition (rec. doc. 109) and Paradigm filed a reply. (Rec. doc. 112). The Court heard oral argument on the motion on May 30, 2018. (Rec. doc. 112).

II. **THE PARTIES' CONTENTIONS**

In its motion, Paradigm argues that Chalmette Burgers does not have a right of action to demand defense and indemnity under the Lease because it assigned all such rights – past, present and future – to Addy's Burger, effective March 2, 2016. In the alternative, Paradigm argues that even were Chalmette's pre-assignment rights under the Lease not assigned to Addy's Burger, Chalmette Burgers still has no right of action because all of the conduct by Paradigm underlying the claims against it occurred after the effective date of the assignment.

3

In response, Chalmette Burgers claims that the rights that accrued to it under the Lease prior to the assignment were not specifically and expressly assigned and that this "silence" should prevent the Court from inferring that the parties intended that such rights be assigned. It points to two Louisiana cases interpreting what it claims is similar contractual language in two different assignments to buttress its position. Moreover, Chalmette Burgers argues that, notwithstanding that the actual breach of the Lease by Paradigm did not occur until after the effective date of the assignment, it properly pleaded pre-assignment tortious and actionable misrepresentations by Paradigm that give rise to its claim for defense and indemnity.

In reply, Paradigm argues that comparison of the language in paragraph 1 of the Assignment (the "assignment language") with that in paragraph 2 (the "assumption language") makes clear that the parties intended that all past and future rights under the Lease were assigned to Addy's Burger as of March 2, 2016. Also, for the first time, Paradigm argues that any claim by Chalmette Burgers to defense and indemnity under the Lease, even if legitimate, is premature.

### III. THE APPLICABLE LAW

*A. Standard for Rule 12(c) Motions for Judgment on the Pleadings*

The purpose of Rule 12(c) is to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curium)). A court deciding a Rule 12(c) motion must accept "all well-pleaded facts as true, viewing them in the light most favorable

4

to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182, 128 S.Ct. 1230 (2008). "Judgment on the pleadings is appropriate where there are no disputed issues of material fact and only questions of law remain." *Caliste v. Cantrell*, No. 17-CV-6197, 2017 WL 6344152, at *2 (E.D. La. Dec. 12, 2017).

Generally, when considering a Rule 12(c) motion, the court is limited to consideration of the facts set forth in the complaint. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). But there are well-established exceptions to this limitation in the Fifth Circuit, particularly involving the court's review of documents that are referred to in the complaint and are central to the plaintiff's claims. *See, e.g., Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n. 4 (5th Cir.), *cert. denied*, 525 U.S. 1041, 119 S.Ct. 591 (1998) (holding that the district court could consider documents attached to the complaint); *Great Plains Trust*, 313 F.3d at 311-13 (affirming district court's Rule 12(c) dismissal where the court considered documents that were referred to in the complaint even though they were not physically attached to the complaint). Any documents that are referred to in the plaintiff's complaint that are central to the plaintiff's claims are considered to be part of the pleadings and are properly considered when reviewing a motion to dismiss or motion for judgment on the pleadings. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000).

The Court finds, and both parties agree, that the Court may consider the language of both the Lease and Assignment in deciding this motion.

*B. Relevant Principles of Contractual Interpretation under Louisiana Law*

In this diversity action, Louisiana's substantive law on interpretation of contracts is controlling. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219 (1996); *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007).

"Interpretation of a contract is the determination of the common intent of the parties." LSA-C.C. Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LSA-C.C. Art. 2046. When interpreting a contract, the words therein "must be given their generally prevailing meaning." LSA-C.C. Art. 2047; *see also Prejean v. Guillory*, 38 So.3d 274, 279 (La.), *reh'g denied*, 45 So.3d 1035 (La. 2010) (common intent of the parties to a contract is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract)*.* "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LSA-C.C. Art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LSA-C.C. Art. 2050.

A contract is "ambiguous" when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. *Sequoia Venture No. 2, Ltd. v. Cassidy*, 968 So.2d 806 (La. App. 2nd Cir. 207), *writ denied*, 972 So.2d 1166 (La. 2008).

Whether a contract is clear and unambiguous is a question of law, not a question of fact. *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 257 (5th Cir. 2016).

## IV.   ANALYSIS

In arguing that its pre-assignment rights were not assigned to Addy's Burger in this case, Chalmette Burger relies heavily (indeed, almost exclusively) on the reasoning and result of the Louisiana Fifth Circuit Court of Appeal's decision in *Lomark, Inc. v. Lavignebaker Petroleum, LLC*[1]. Because of Chalmette Burger's reliance on *Lomark* here, a comparison of the *Lomark* assignment with the Assignment in this case is merited.

In *Lomark*, the trial court granted Defendant's exception of no right of action, finding that the Plaintiff had assigned to its assignee any rights it had to bring a claim for pre-assignment breach. The relevant language in the *Lomark* assignment was as follows:

> . . . Assignor does hereby assign, transfer, set over and convey unto Assignee, all of Assignor's rights, title and interest, as Purchaser or Lessee in and to the following described contracts ... (hereinafter sometimes collectively referred to as the "Contracts"), to wit:
>
> [The "following described contracts" mentioned above are the Contract of Sale (Branded), where Assignors had the status/capacity as Purchasers, and the Station Lease contract, where Assignors had the capacity as Lessees.]
>
> To have and to hold the same unto Assignee, its successors and assigns, forever.
>
> Assignee hereby acknowledges and it hereby assumes the Contracts and agrees that it shall be liable to [LBP], the current Seller or Lessor under the Contracts, and its successors and assigns, to perform and comply with each and every one of the covenants, duties, and obligations of Purchaser or Lessee arising under the contracts on and after the Effective Date of this Assignment. **Assignor hereby acknowledges that it remains liable for every one of the covenants, duties, and obligations of Purchaser or Lessor arising under the Contracts and is not released from any obligations arising under the Contracts....** Assignor and Assignee hereby further acknowledge and agree that upon execution of this Assignment

---

[1] 110 So. 3d 1107 (La. App. 5th Cir.), *writ denied*, 112 So.3d 848 (La. 2013).

> and continuing for the remainder of the term of the Contracts, they shall each be jointly, severally and solidarily liable and responsible to LBP for the full, faithful and timely performance and discharge of each and every covenant, duty, and obligation of Purchaser or Lessee under the Contracts.

*Id.* at 1111-12 (emphasis added). On appeal of the trial court's decision, the Plaintiff argued that, although the first sentence of the above-quoted language states that Assignors (Plaintiffs) assigned "all of Assignor's rights, title and interest, as Purchaser or Lessee in and to the following described contracts ...," later language in the assignment agreements, quoted in bold-face above, limits or curtails that assignment of rights. *Id.* at 1112. Plaintiffs argued that the later language—that Plaintiff(s) shall remain "liable for every one of the covenants, duties, and obligations of Purchaser or Lessor arising under the Contracts and is not released from any obligations arising under the Contracts"—had the effect of retaining to them the rights to sue for any alleged breaches of those covenants, duties, and obligations arising under the contracts occurring prior to execution of the assignments. *Id.*

The *Lomark* Court agreed, finding that, while the initial language unambiguously included all future "rights **and** obligations," the assignment was ambiguous as to whether the right to sue for pre-assignment breaches had been assigned. *Id.* This finding was based upon the express statement that the assignor remained liable for any breaches of its pre-assignment obligations.

The language of the Assignment in this case is not the language analyzed by the *Lomark* Court. While there is a similarity in one portion of each of the two assignments, there are significant differences as well. Yet, Chalmette Burgers urges the Court to rely exclusively on the *Lomark* Court's interpretation of this different language to find the Assignment in this case to be ambiguous. The Court declines that invitation and will instead be guided by the

8

dictates of the Louisiana Civil Code and the actual words of the subject Assignment in determining whether that language is "clear and explicit" and whether it leads to absurd consequences.

The key language of our Assignment is set forth here again in bold-face:

> As of the Effective Date, Assignor hereby assigns, conveys, transfers and sets over unto Assignee **all of Assignor's right, title and interest in, to and under the Lease, including, without limitation**, the Guaranty, if any, and **all of Assignor's right, title and interest in and to** security, cleaning or other deposits and in and to any claims for rent, **arrears rent or any other claims arising under the Lease against any lessee thereunder**, subject to the rights of the lessees under the Lease.

(Rec. doc. 1-2)(emphasis added).

The Court finds that the language of this paragraph clearly and unambiguously assigned Chalmette Burger's right to bring its claim in this case for defense and indemnity against Paradigm. First, like the assignment in *Lomark*, this language unambiguously assigned all of Chalmette Burger's future rights and obligations. Further, as least as it pertains to claims against the "lessee," *i.e.*, Paradigm, this language clearly and unambiguously assigned claims for arrears rent (by definition a claim that arose before the assignment) and, more importantly, "**any** other claims arising under the Lease against any lessee..." (*Id.*).

Chalmette Burger's claim against Paradigm fits squarely within the description in the Assignment – "any other claims arising under the Lease against any lessee." Importantly, that claim was not brought in this case until April 9, 2018, over two years after the effective date of the Assignment and over a year after Addy's Burger sued Chalmette Burgers in state court. (Rec. doc. 85). Based upon the plain language of the Assignment, the right to bring the current claim against Paradigm was assigned to Addy's Burger on March 2, 2016.

9

Any suggestion that the parties to the assignment did not intend to assign any pre-assignment rights is undermined by the specific mention of rights to arrears rents. Indeed the assignment of that particular "past" right is then amplified and expanded by the assignment of "**any other** rights" against the lessee, which clearly reaches the right to seek defense and indemnity against Paradigm.

The language of the Assignment is not ambiguous because the Court can ascertain the common intent of the parties from the language used by them in that document. *Sequoia Venture No. 2, Ltd. v. Cassidy*, 968 So.2d 806 (La. App. 2nd Cir. 207), *writ denied*, 972 So.2d 1166 (La. 2008). Because the clear language of the Assignment included the assignment of the right to seek defense and indemnity against Paradigm as of March 2, 2016, Chalmette Burger's claim for such in this case should be and is dismissed with prejudice.

New Orleans, Louisiana, this __4th__ day of _____June_____, 2018.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE